ISB SALES COMPANY v DAVE'S CAKES

Docket No. 238921. Submitted September 9, 2003, at Lansing. Decided
September 23, 2003, at 9:05 A M. Leave to appeal sought.

ISB Sales Company brought an action in the Kent Circuit Court
against Dave's Cakes and Meurer Bakeries, seeking commissions
allegedly owed as a result of the plaintiff's activities as a sales rep-
resentative for Meurer Bakeries pursuant to a contractual agree-
ment. The business relationship between the plaintiff and Meurer
Bakeries had been terminated and Dave's Cakes (hereafter the
defendant) had allegedly acquired the assets of Meurer Bakeries,
but not its liabilities. Following a period of informal communica-
tions between the attorney for the plaintiff and counsel for the
defendant, who was in Milwaukee, Wisconsin, in an attempt to
resolve the matter before proceeding with the litigation, plaintiff
filed an application for entry of default, alleging that the defendant
had failed to appear, plead, or otherwise defend the action. The
entry of default was signed by the deputy court clerk. The trial
court, Dennis B. Leiber, J., thereafter signed an order of default
judgment. The defendant, through local counsel, moved to set aside
the default judgment, alleging a meritorious defense and good
cause for failing to answer the complaint. The plaintiff opposed the
motion. The motion was filed thirty-three days after the entry of
the default and within five days of the entry of the default judg-
ment. The court denied the motion and, on reconsideration,
affirmed its determination, ruling that the motion was untimely and
that good cause to set aside the default judgment had not been
shown. The defendant appealed.

The Court of Appeals held:

1. The trial court erred in concluding that the motion to set aside
the default judgment was not timely. MCR 2.603(D)(2)(a) does not
place a time limit regarding the filing of a motion to set aside
where the default only, and not a default judgment, has been filed
in the trial court. MCR 2.603(D)(2)(b) provides that, where a
default judgment as been entered, a motion to set aside must be
filed within twenty-one days after the default was entered. The
defendant therefore had twenty-one days after the entry of the

default judgment to file its motion. The defendant did file its motion within that period.

2. The defendant set forth a meritorious defense and demonstrated both that a procedural irregularity had occurred and that there was a reasonable excuse for failing to answer the complaint. The trial court abused its discretion in refusing to set aside the default judgment.

Reversed and remanded.

MOTIONS AND ORDERS — DEFAULTS — DEFAULT JUDGMENTS — MOTIONS TO SET ASIDE.

There is no time limit within which a motion to set aside a default must be filed where the default only, and not a default judgment, has been filed in the trial court; a motion to set aside a default judgment must be filed within twenty-one days after the entry of the default judgment (MCR 2.603[D][2][a], [b]).

*Nelson, Kreuger & Schrotenboer, P.C.* (by *Jon J. Schrotenboer*), for ISB Sales Company.

*Robert J. Riley* for Dave's Cakes.

Before: DONOFRIO, P.J., and FORT HOOD and SCHUETTE, JJ.

PER CURIAM. Defendant Dave's Cakes[1] appeals as of right from the trial court's order granting a default judgment in favor of plaintiff. We reverse and remand for proceedings consistent with this opinion.

I. BASIC FACTS AND PROCEDURAL HISTORY

On October 27, 2000, plaintiff filed an action against Meurer Bakeries and defendant. The complaint alleged that plaintiff acted as a "manufacturers representative-broker" for Meurer Bakeries pursuant to a contractual agreement. In accordance with the terms of the contract, plaintiff was paid commissions

---

[1] The singular defendant refers to Dave's Cakes only. The liability of defendant Meurer Bakeries is not at issue on appeal.

based on the sale of Meurer Bakeries' products. The complaint acknowledged that the business relationship terminated on September 11, 2000, and further alleged that defendant "acquired" Meurer Bakeries, although the date of acquisition was not identified. Commissions in the amount of $21,262.81 were allegedly owed to plaintiff pursuant to the Michigan sales representative commission act (SRCA), MCL 600.2961. Plaintiff sought the amount of commissions that were due and outstanding, double damages in accordance with the SRCA, and reasonable costs and attorney fees. In the prayer for relief portion of the complaint, plaintiff sought a judgment in excess of $25,000, and did not request a sum certain. The complaint referenced the attachment of three documents: the contract between plaintiff and Meurer Bakeries, evidence of the termination of the contractual relationship, and documents showing the outstanding commissions. Despite this reference, there were no documents attached to the complaint[2] filed with the trial court.

Although defendant was based in Georgia, it was represented by counsel in Milwaukee. On November 15, 2000, Milwaukee counsel sent a letter with documentation purportedly demonstrating that defendant was not the real party in interest and requesting dismissal. In this communication, it was alleged that defendant had purchased the assets of Meurer Bakeries, not the liabilities, through an intermediary. It was

---

[2] Although two defendants were listed in the complaint, the complaint utilized the singular "defendant" and did not distinguish the conduct of the two named defendants. The complaint also alleged that Meurer Bakeries was established in Wisconsin, while defendant was established in Georgia. It further alleged that jurisdiction was acquired through Michigan's long arm statute, MCL 600.715. A determination regarding jurisdiction did not occur in this case.

further alleged that Meurer Bakeries did not have authority to represent that there had been an assumption of liabilities by defendant. It was requested that plaintiff's counsel contact Milwaukee counsel immediately if voluntary dismissal would not occur to alert Milwaukee counsel of the need to file the appropriate answer to the complaint.

Milwaukee counsel did not receive any communication in response from plaintiff's counsel. Consequently, Milwaukee counsel sent a second letter dated January 26, 2001, seeking voluntary dismissal. The letter was sent after several telephone calls to plaintiff's counsel were not returned. To prompt action on the part of plaintiff's counsel, the letter stated that it would be presumed that defendant would be dismissed from the litigation if contact did not occur within the next ten days.

There is no evidence that plaintiff's counsel acted within ten days as requested. Rather, on April 17, 2001, plaintiff's counsel wrote a letter to defendant, stating that the documentation submitted was insufficient to absolve defendant of the liabilities of Meurer Bakeries. The letter warned that responsive pleadings should be filed by May 15, 2001, or a request for entry of a default would be filed.

On May 2, 2001, Milwaukee counsel sent another letter to plaintiff's counsel in an attempt to resolve the matter before proceeding with the litigation. This letter offered additional information regarding the succession of the purchase of the assets of Meurer Bakeries. In closing the letter, Milwaukee counsel requested communication by telephone or in writing regarding whether the litigation would proceed so as to allow defendant time to retain local counsel in

Michigan. The letter stated that it was presumed that defendant would be given two weeks' notice so that it could retain local counsel. Although plaintiff's counsel had represented that a request for a default would be sought if responsive pleadings were not filed by May 15, 2001, the deadline passed without action by plaintiff and the case became dormant.

Correspondence between the attorneys effectively ceased in May 2001, and activity was eventually prompted by the circuit court. On September 12, 2001, the case flow division of the circuit court sent a notice to plaintiff's counsel and defendant's corporate headquarters in Georgia that the litigation would be dismissed for lack of progress unless activity occurred within the next twenty-eight days. Prompted by the notice from the circuit court, plaintiff's counsel sent a letter to Milwaukee counsel indicating that an application for entry of default and an entry of default had been filed with the trial court. The letter, dated October 3, 2002, was silent regarding any time frame to allow defendant to retain local counsel. Rather, the letter advised Milwaukee counsel to contact plaintiff's counsel upon receipt to discuss the matter further.

Although the last communication sent by plaintiff's counsel indicated that further discussions would occur,[3] plaintiff's counsel took action to obtain the default judgment. On October 8, 2001, an application for entry of default was filed in the trial court. The document provided that defendant had failed to appear, plead, or otherwise defend the litigation as

---

[3] The briefs on appeal do not address whether telephone communications occurred between the parties' counsel, and there is no record evidence of any communications.

required by law. The entry of default was signed by the deputy court clerk.

On October 30, 2001, plaintiff's counsel filed an affidavit to support the entry of a default judgment. This affidavit, contrary to the allegations contained in the complaint,[4] alleged that the claim was "not based on a note or other written evidence." A total judgment amount of $90,154.57 was requested.[5] On October 31, 2001, the trial court signed the order of default judgment.

On November 5, 2001, defendant, through local counsel, moved to set aside the default judgment. The motion disputed the acquisition of jurisdiction over defendant and the propriety of service of the complaint. The motion also alleged a meritorious defense based on the purchase of the assets alone of Meurer Bakeries through an intermediary, and good cause for failing to answer the complaint based on the parties' informal communications to resolve the litigation. Affidavits delineating the meritorious defense and good cause requirements were submitted by Milwaukee counsel and David Stenglein, defendant's president.

Plaintiff opposed the motion to set aside the default judgment. It was alleged that the motion was untimely filed beyond the twenty-one day period provided by the court rules. Plaintiff further alleged that correspondence and payments by defendant showed

---

[4] The complaint identified a contractual relationship and documentation to show the outstanding commissions, although the documents were not submitted with the complaint.

[5] The affidavit divided the $90,154.57 judgment as follows. Damages: $63,788.43; Interest: $3,718.56; Costs: $108.94; Other: $22,538.64 (attorney fees).

defendant's assumption of the liabilities of Meurer Bakeries in order to dispute the allegations of good cause and a meritorious defense. The trial court held that the motion was untimely filed and that good cause had not been established. Defendant moved for reconsideration of the decision, alleging procedural deficiencies regarding the entry of the default judgment and citing the informal relationship and agreement developed between the parties' counsel to allow time to retain local counsel. The trial court granted the motion for reconsideration and, on reconsideration, affirmed its prior determination.

## II. STANDARD OF REVIEW

The trial court's decision to enter a default is reviewed for an abuse of discretion. *Barclay v Crown Bldg & Dev, Inc*, 241 Mich App 639, 642; 617 NW2d 373 (2000). Although the law favors a determination of a claim on the basis of its merits, the policy of this state is generally against setting aside defaults and default judgments that have been properly entered. *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 229; 600 NW2d 638 (1999). The construction and interpretation of court rules present a question of law that this Court reviews de novo. *Barclay, supra.* When construction of a court rule is required, the legal principles that govern the construction and application of statutes are utilized. *Grievance Administrator v Underwood*, 462 Mich 188, 193; 612 NW2d 116 (2000). Issues of statutory construction present questions of law that are reviewed de novo. *Cruz v State Farm Mut Automobile Ins Co*, 466 Mich 588, 594; 648 NW2d 591 (2002). The primary goal of statutory interpretation is to give effect to the intent of the

Legislature. *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). This determination is accomplished by examining the plain language of the statute. *Id.* Although a statute may contain separate provisions, it should be read as a consistent whole, if possible, with effect given to each provision. *Gebhardt v O'Rourke*, 444 Mich 535, 542; 510 NW2d 900 (1994). If the statutory language is unambiguous, appellate courts presume that the Legislature intended the meaning plainly expressed and further judicial construction is neither permitted nor required. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000). Statutory language should be reasonably construed, keeping in mind the purpose of the statute. *Draprop Corp v Ann Arbor*, 247 Mich App 410, 415; 636 NW2d 787 (2001). If reasonable minds could differ regarding the meaning of a statute, judicial construction is appropriate. *Adrian School Dist v Michigan Pub School Employees' Retirement Sys*, 458 Mich 326, 332; 582 NW2d 767 (1998). When construing a statute, a court must look at the object of the statute in light of the harm it is designed to remedy and apply a reasonable construction that will best accomplish the purpose of the Legislature. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994).

### III. MCR 2.603(D)(2)

MCR 2.603(D) governs setting aside defaults and provides:

(1) A motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the

defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed.

(2) Except as provided in MCR 2.612, if personal service was made on the party against whom the default was taken, the default, and default judgment if one has been entered, may only be set aside if the motion is filed

(a) before entry of judgment, or

(b) if judgment has been entered, within 21 days after the default entered.

(3) In addition, the court may set aside an entry of default and a judgment by default in accordance with MCR 2.612.

In the present case, the deputy court clerk entered the default on October 8, 2001. However, the default judgment itself, setting forth the monetary amount, was not entered until October 31, 2001. Defendant filed the motion to set aside the default judgment on November 5, 2001. Thus, if the twenty-one-day period begins to run upon entry of the default alone, the motion to set aside the default judgment was filed thirty-three days after entry of the default and outside the twenty-one-day period. If the filing of the default *judgment* starts the running of the twenty-one day period, the motion was timely filed a mere five days after the entry of the default judgment. Plaintiff alleged that the motion was untimely filed outside the twenty-one-day period provided in MCR 2.603(D)(2)(b), and the trial court agreed.

Applying the rules of statutory construction to the court rules, *Underwood, supra,* we conclude that the trial court erred in holding that the motion to set aside the default judgment was untimely. Review de novo of a trial court's interpretation of the court rules must occur, *Cruz, supra,* with the primary goal to

give effect to the intent of the Supreme Court[6] by examining the plain language of the court rule. *In re Telecom Complaint, supra.* Review of the plain language of MCR 2.603(D)(2)(a) reveals that there is no time frame placed on the filing of a motion to set aside where the default only, and not a judgment, has been filed in the trial court. *Id.*

However, the court rule further provides that the filing of a motion to set aside must occur "if judgment has been entered, within 21 days after the *default* entered." (Emphasis added.) MCR 2.603(D)(2)(b). Plaintiff asserts that the second reference to default only requires that the motion be filed within twenty-one days of entry of the default alone. The plain language of the court rule must be examined as a whole to give effect to each subsection. *Gebhardt, supra.* Subsection D(2)(a) of the court rule clearly addresses the default only, before entry of the default judgment. MCR 2.603(D)(2)(a). Subsection D(2)(b) of the court rule restricts its application to a default judgment because it begins with the qualification or caveat: "if judgment has been entered . . . ." Thus, MCR 2.603(D)(2)(b) restricts the scope of the application of subsection D(2)(b) the court rule to the circumstance where a judgment has been entered, unlike subsection D(2)(a). A proviso restricts the operative effect of statutory language to less than what its scope of operation would be otherwise. 2A Singer, Sutherland Statutory Construction (6th ed), § 47:08, pp 235-236. Provisos are interpreted in accordance

---

[6] The Michigan Court Rules govern practice and procedure in the courts established by the Constitution and laws of the state of Michigan, and the Supreme Court has the authority to create and amend the rules. See MCR 1.103 and MCR 1.201.

with the general rules of statutory construction. *Id.* Thus, once a default judgment has been entered, a twenty-one-day period for setting aside the default judgment is permitted, MCR 2.603(D)(2)(b), but there is no time restriction where the default only has been entered. MCR 2.603(D)(2)(a). Applying the court rule to the facts of this case, the motion to set aside the default judgment was timely filed within the twenty-one-day period.

Although not dispositive, we note that this interpretation is consistent with the commentary found in 3 Dean & Longhofer, Michigan Court Rules Practice, § 2603.1, p 311, which sets forth a cautionary note regarding the lack of clarity in the use of the terms "default" and "default judgment":

> The entry of a default provides the basis for the entry of a default judgment. Default judgment may be entered by the clerk in limited circumstances, or by the court, as provided in MCR 2.603(B). Although there is a distinction between an entry of default and the entry of a default judgment, the courts, and even the rules, frequently use the terms "default" and "default judgment" in a less than precise manner. For example, MCR 2.603(D)(2)(b) uses the term "default" rather than "default judgment" when it states that a default judgment may be set aside "within 21 days after the *default* was entered." As there is no requirement that a default judgment must enter within 21 days after entry of default, the subrule, to be given effect, must be read to refer to entry of the default *judgment.* Counsel should be aware of this lax use of terms when reviewing cases on point. [Emphasis in original.]

Following review de novo and applying the plain language of the court rule in context, *Cruz, supra,* we conclude that the trial court erred as a matter of law in determining the motion to set aside the default

judgment was untimely. It was filed within five days of entry of the default judgment, well within the twenty-one days set forth in the court rule. MCR 2.603(D)(2)(b).

#### IV. MCR 2.603(D)(1)

MCR 2.603(D)(1) sets forth the requirements for setting aside a default judgment:

> A motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed.

In *Alken-Ziegler, supra* at 233, the Supreme Court held that, to set aside a default judgment, a party must both file an affidavit of meritorious defense and show good cause. The good cause inquiry is satisfied if there is a substantial irregularity or defect in the proceeding on which the default is based or a reasonable excuse for failure to comply with the requirements that created the default. The Supreme Court disavowed prior appellate decisions that had imposed a manifest injustice requirement, noting that manifest injustice was not a discrete event, but a factor to be considered in the good cause and meritorious defense requirements:

> "[M]anifest injustice" is not a discrete occurrence such as a procedural defect or a tardy filing that can be assessed independently. Rather, manifest injustice is the result that would occur if a default were to be allowed to stand where a party has satisfied the "meritorious defense" and "good cause" requirements of the court rule. When a party puts forth a meritorious defense and then attempts to satisfy "good cause" by showing (1) a procedural irregularity or

defect, or (2) a reasonable excuse for failure to comply with the requirements that created the default, the strength of the defense obviously will affect the "good cause" showing that is necessary. In other words, if a party states a meritorious defense that would be absolute if proven, a lesser showing of "good cause" will be required than if the defense were weaker, in order to prevent a manifest injustice. [*Id.*]

### A. MERITORIOUS DEFENSE

Following a review of the record in this case, it is clear that defendant set forth a meritorious defense. Defendant, a corporation based in Georgia, disputed that long arm jurisdiction could be acquired, and this dispute was supported by the affidavits of its president and Milwaukee counsel. Defendant also presented documentation to indicate that plaintiff's contract with Meurer Bakeries was cancelled effective September 11, 2000. Although defendant sent a letter to plaintiff indicating that it "hope[d] and pray[ed]" that the relationship would continue, this correspondence also sought to alter the prior contractual relationship by increasing the price structure. There is no evidence in the record to indicate that plaintiff accepted the terms set forth by defendant in this letter. While a representative of Meurer Bakeries indicated that the company had become "part" of defendant, any reliance on this letter as a contract between plaintiff and defendant is questionable in light of the cancellation of the contract in this same communication.

On appeal, plaintiff alleges that jurisdiction was established over defendant as shown by a writ of garnishment obtained from Gordon Foods because of its contractual relationship with defendant. This issue of

jurisdiction was not raised, addressed, or decided in the trial court. Therefore, this issue is not preserved for appellate review. *Miller v Inglis*, 223 Mich App 159, 168; 567 NW2d 253 (1997).[7] Furthermore, plaintiff failed to file a cross-appeal regarding this unpreserved issue and failed to cite authority for the proposition that the contacts required for obtaining long arm jurisdiction may be satisfied by the requirements necessary for obtaining a writ of garnishment. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 57; 649 NW2d 783 (2002). Given the information available from defendant, a meritorious defense was set forth in the documentation.

### B. GOOD CAUSE

The good cause requirement of MCR 2.603(D)(1) may be satisfied by demonstrating a procedural irregularity or defect or a reasonable excuse for failing to comply with the requirements that led to the default judgment. *Alken-Ziegler, supra.* We conclude that defendant has demonstrated both a procedural irregularity and a reasonable excuse for failing to answer

---

[7] We note that an issue of law may be addressed, although unpreserved, where all the necessary facts are before the appellate court. *Miller, supra.* However, the factual circumstances surrounding defendant's contacts in this state are not contained in the lower court record. Thus, this challenge cannot be addressed on appeal. Furthermore, plaintiff's narrative challenge to the veracity of the Stenglein affidavit also cannot be addressed because of the lack of a factual record. Plaintiff further contends that a meritorious defense cannot be established because defendant made partial payments to it. Even if record evidence of payments by defendant, not merely allegations, had been submitted by plaintiff, it does not follow that defendant may be held liable under successor liability or as a guarantor. There is no documentation in the record available to establish successor liability or that defendant acted as a guarantor for Meurer Bakeries.

the complaint. MCR 2.603(A) governs entry, notice, and the effect of a default:

> (1) If a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, and that fact is made to appear by affidavit or otherwise, the clerk must enter the default of that party.
>
> (2) Notice of the entry must be sent to all parties who have appeared and to the defaulted party. If the defaulted party has not appeared, the notice to the defaulted party may be served by personal service, by ordinary first-class mail at his or her last known address or the place of service, or as otherwise directed by the court.
>
> (a) In the district court, the court clerk shall send the notice.
>
> (b) In all other courts, the notice must be sent by the party who sought entry of the default. Proof of service and a copy of the notice must be filed with the court.

The present record shows that plaintiff did not comply with the provisions of MCR 2.603(A)(2)(b). That rule requires that proof of service and a copy of the notice of entry must be filed with the trial court. Here, there is no proof of service in the lower court file as required by the court rule.

Additionally, MCR 2.603(B)(2) and (3) address whether the default judgment may be entered by the clerk or must be approved by the trial court:

> (2) Default Judgment Entered by Clerk. On request of the plaintiff supported by an affidavit as to the amount due, the clerk may sign and enter judgment for that amount and costs against the defendant, if
>
> (a) the plaintiff's claim against a defendant is for a sum certain or for a sum that can by computation be made certain,

(b) the default was entered because the defendant failed to appear, and

(c) the defaulted defendant is not an infant or incompetent person.

The clerk may not enter or record a judgment based on a note or other written evidence of indebtedness until the note or writing is filed with the clerk for cancellation, except by special order of the court.

(3) Default Judgment Entered by Court. In all other cases the party entitled to a judgment by default must apply to the court for the judgment.

(a) A judgment by default may not be entered against a minor or an incompetent person unless the person is represented in the action by a conservator, guardian ad litem, or other representative.

(b) If, in order for the court to enter judgment or to carry it into effect, it is necessary to

(i) take an account,

(ii) determine the amount of damages,

(iii) establish the truth of an allegation by evidence, or

(iv) investigate any other matter,

the court may conduct hearings or order references it deems necessary and proper, and shall accord a right of trial by jury to the parties to the extent required by the constitution.

Plaintiff's counsel presented an affidavit to comply with the provisions of MCR 2.603(B)(2) in order to obtain entry of the default by the clerk. This affidavit alleged that: the judgment was for a sum certain or a sum that could be readily calculated to a sum certain, defendant failed to appear, defendant was not an infant or incompetent person, and the judgment was not based on a note or other written evidence. However, the assertion in the affidavit that the judgment was not based on a note or other written evidence was directly contrary to allegations contained in the

complaint. The complaint alleged that plaintiff's contractual relationship with Meurer Bakeries was essentially assumed by defendant through successor liability. The complaint filed in this matter identified the dispute as premised on the breach of a written contract. The complaint further alleged that the failure to pay the commissions in accordance with the contract was shown by submitted documentation. While the contract referenced the documentation as attached to the contract, no documentation was filed with the complaint.[8] On the basis of the procedural irregularities that occurred in obtaining entry of the default and the default judgment, defendant demonstrated good cause for setting aside the default judgment.[9]

Additionally, good cause to set aside a default judgment may be established by a reasonable excuse for failing to comply with the requirements that created

---

[8] Indeed, MCR 2.113(F)(1) provides that where a claim or defense is premised on a written instrument, a copy of the instrument or relevant parts must be attached to the pleading as an exhibit. There is an exception to this rule if the written instrument is in the possession of the adverse party and the pleading acknowledges the adverse party's possession. MCR 2.113(F)(1)(b). There was no allegation in the complaint that the documentation was in the possession of defendant. Consequently, although the allegations in the complaint indicated that MCR 2.113(F)(1) was being complied with as a result of the purported attached submission of the documents, there was no documentation attached to the complaint.

[9] The question whether the judgment was for a sum certain or subject to calculation is also debatable. If the provisions of MCR 2.113(F)(1) had been complied with so that the alleged outstanding commission invoices had been submitted, one could argue that judgment was for a sum certain or subject to calculation. There was no documentation contained in the lower court record to show outstanding commissions in the amount of $21,262.81. The only documentation offered as evidence of liability was an invoice that contained two entries: "10/28/2000, Bill $257.02" and "11/10/2000 Bill $171.26." Furthermore, while the complaint may have requested reasonable costs and attorney fees, it did not set forth whether the action was being pursued by in house counsel or on a contingency fee basis. To state that defendant was on notice of being held accountable for a 1/3 contingency fee agreement is specious at best.

the default. In this case, the attorneys' course of conduct, albeit unwise, provided a reasonable excuse for failing to file an answer to the complaint. When the litigation was filed, the attorneys began a process of informal communications in an attempt to resolve the litigation. The attorneys' correspondence set forth pledges to continue the informal communications and deadlines for action. However, the attorneys did not follow through with these pledges and deadlines until the filing of the request for a default. In view of the nature of the relationship that occurred as a result of the attorneys' informal communications instead of stipulations filed with the trial court, Milwaukee counsel had good cause to believe that an answer was unnecessary in light of the representation that the informal communications would continue.[10] Therefore, the trial court erred as a matter of law in concluding that the motion to set aside the judgment was untimely. Furthermore, it was an abuse of discretion to refuse to set aside the default judgment when a meritorious defense and good cause were presented by defendant. *Barclay, supra.*

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

---

[10] Even in the letter advising Milwaukee counsel of the filing of the default, plaintiff's counsel indicated that telephone communication should occur between the two.